Simpson, C. J., and McGowan, A. J., concurred.

---

CASE No. 1183.*

McGOWAN v. HITT.

1. A man on the eve of his marriage, and on the alleged consideration of the marriage, but with intent to defeat the claims of his creditors, conveyed his entire visible estate to his intended wife, she being ignorant of his fraudulent purpose. *Held*, that the deed was fraudulent, and its terms were sufficient to charge the wife with notice and to affect her with the fraud.

2. And the deed being recorded, creditors of the husband were chargeable with notice of the fraud which the terms of the deed disclosed.

---

* Inserted out of its order, so as to complete in this volume the cases of April Term, 1881.—Reporter.

3. Distributees of an estate having given to an administratrix, in 1861, their bonds, with sureties, for purchases at the estate sale of personalty, *it would seem* that the administratrix, by reason of the sureties' rights, have proceeded in equity to subject the distributive shares of the principals to the extinguishment of their indebtedness.

4. A creditor cannot be said to have so exhausted his legal remedies against a surety as to entitle him to ask the aid of the Court of Equity to reach property fraudulently conveyed away, until he has exhausted his legal remedies against the principal and other surety also.

5. A debtor fraudulently conveyed away his estate, pending action against him. From failure of the courts to sit, and other causes, judgment was not obtained until seven years afterwards, and thereupon plaintiff promptly proceeded in equity to reach the property so transferred. Without imputing any laches to plaintiff in obtaining his judgment—*Held*, that the Statute of Limitations commenced to run from the discovery of the fraud, and was not suspended until judgment obtained at law; and that the suit in equity was barred. McIVER, A. J., dissenting.

Before HUDSON, J., Laurens, February, 1881.

At the hearing of this appeal, Hon. Benjamin C. Pressley, of the First Judicial Circuit, and Hon. Thomas B. Fraser, of the Third Circuit, sat in the stead of the Chief Justice and Associate Justice McGowan, who were constitutionally disqualified.

The action was by John J. McGowan as administrator *de bonis non* of William Hitt, deceased, against Martin Hitt and Mary, his wife, and Aaron Wells.

The Circuit decree (omitting its statement of facts, which are repeated in the opinion,) was as follows :

The issues presented and the questions to be determined in this case are of a very interesting character, and I would be pleased to have more time to elaborate my views upon them, but pressure of business requires that I shall forego this desire and give my opinion briefly.

Antenuptial conveyances sometimes are made to the intended wife voluntarily by the man through overflowing love and affection, and unsolicited by the woman. In this case they are more properly denominated voluntary deeds, than conveyances in consideration of marriage. Others, again, are the result of negotiations between the parties. They are made conditions precedent to the marriage, enter into and form part of the consideration,

and are properly denominated deeds in consideration of marriage, which it is needless to say constitutes the highest and most valuable consideration known to law. In either instance the deed may on its face purport to be in consideration of marriage, but the fact may be, that in the one case it is an unsolicited donation, and in the other the result of deliberate contract, and a *sine qua non* to the solemnization of the marriage. Evidence, I think, is always admissible to prove the facts of the case, and these facts should be made always to appear, as they may seriously affect consequent litigation.

The first question raised for answer is, Was it lawful for Martin Hitt, being indebted $2,200, and owning property worth but little if any more, voluntarily to give the whole of this property to his intended wife, and thus to entirely defeat, delay and hinder his creditors ? The leading case on this subject in South Carolina is that of *Simpson & Davidson* v. *Admiral Richard Graves and others, Riley's Ch.* 232. I cannot find that this case has been overruled or even modified by subsequent decisions, but on the contrary has been recognized as sound law by later decisions of our courts.

Judge Staples, of Virginia, in the late case of *Herring* v. *Wickham*, 29 *Gratt.* 628, takes issue with Justice Nott, of South Carolina, in the aforesaid case, and in a very learned opinion combats this doctrine of South Carolina. His opinion lays down the bold doctrine that creditors are utterly helpless as against an antenuptial conveyance of a man's entire property to his intended wife, however much he may be in debt and however fraudulent may be his intention, provided the wife is not cognizant of the fraud. The two opinions are able and learned, and hold the opposite extremes of the law of fraud as applicable to antenuptial settlement by insolvent debtors. I regard the views of Justice Nott as the sounder and safer of the two, and certainly more binding on me. I shall not trouble myself to make extracts from either, nor from other judgments upon this subject. I hold that the conveyance by an insolvent man voluntarily of his entire property to an intended wife on the eve of marriage is fraudulent as against his creditors, and will be declared void, on proper and timely application to the courts.

*Secondly.* Does the fact that the conveyance of his entire prop-
erty by an insolvent to his intended wife on the eve of marriage
is made at her special instance and request and as a condition
precedent to the marriage, she being innocent of fraudulent
intent, alter the case? We think not. And for our reasons
refer to the aforesaid opinion of Justice Nott. We hold that a
man in debt cannot be allowed to make marriage the means and
occasion of entirely defeating, delaying and hindering creditors
by settling the whole of his property on a woman in considera-
tion of marriage. The case in hand clearly shows that Martin
Hitt, being indebted to an amount nearly equal to the value of
his entire property, did, on the eve of marriage, convey to his
affianced his entire property, with intent thereby to defeat his
creditors. Though not cognizant of this intent, his wife cannot
retain this property against the demands of the creditors, unless
these demands are barred by the Statute of Limitations inter-
posed in her behalf; and to this inquiry we will address
ourselves.

The deed in this instance is expressed to be in consideration of
marriage and purports to convey certain well-defined real estate
and specific articles and items of personal property. The present
plaintiff, McGowan, was familiar with the property of Hitt, and
still more cognizant of his affairs was Milly Hitt, the first
administratrix of William Hitt, and payee of these notes. She
knew that Hitt had conveyed his entire property to Mary Hen-
derson, solely in consideration of marriage, whilst her suit for a
large amount was pending against him. Not a fact or circum-
stance alleged now against this deed was not known to her when
it was made, and seems also to have been known to McGowan.
But, whether positively and actually known, or not, the deed
was duly recorded November 30th, 1868, and bears on its face
all the facts constituting the fraud, or enough at least to put the
parties upon inquiry.

A recorded deed is constructive notice to the world of all that
it contains on its face, and if it express on its face all the
elements that constitute the fraud, it becomes notice of the fraud
itself. If an insolvent man convey away all his property,
expressed to be for a valuable consideration, it is not constructive

notice of fraud, because it may speak truth. But it may afterwards be discovered that it speaks falsely in expressing a valuable consideration, when in fact it is voluntary. From this discovery of the fraud alone would the currency of the statute begin ; but if the deed on its face announced a gift to be made, it is notice of all the fraud that a gift gives rise to, and the statute would run from the date of the recording against all having no previous actual notice. To his kinswoman, Milly, and neighbor McGowan, the deed when recorded proclaimed its own character, and they had personal knowledge that he was in debt, and that the deed covered his entire visible, tangible property. They were thus affected with notice of the fraud from November 30th, 1868. Nine years elapsed before the institution of this suit, and more than four, perhaps six years, before the death of Milly Hitt.

But the plaintiff contends that he could not ask relief of the Court of Common Pleas sitting in equity, until he had recovered judgment at law and exhausted his remedy there. That this did not occur until June, 1875, from which date alone can the currency of the statute against him begin, and that having come into this court November 1st, 1877, the bar was not complete. But the inflexible rule of law, and also in equity, is that the statute runs from the discovery of the fraud. To all persons *sui juris* the law allows four years from this date, in which to begin proceedings. Within this time all persons not under disability are supposed to be able to proceed at law, exhaust their remedy there, and, if necessary, come into equity. Certain it is that this is all the time the law as it then stood, allowed them. If their own tardiness or untoward events prevented them from entering suit in due time, it is the plaintiff's loss and the defendant's gain. *Vigilantibus non dormientibus leges subveniunt.*

The payee of the note, Milly Hitt, was barred in her life-time against this action and claim, and her successor, the plaintiff, is in no better condition. The action is barred by lapse of time, and it is adjudged that the complaint be dismissed with cost.

Plaintiff appealed upon the following exceptions :

1. Because his Honor erred in holding that the deed from defendant Hitt to his wife was sufficient knowledge of the fraud

to give currency to the Statute of Limitations, or that the plaintiff was otherwise affected with knowledge of the fraud for more than four years previous to filing his complaint.

2. Because his Honor erred in holding that the Statute of Limitations began to run before the judgment was obtained in the action at law against the defendant, Martin Hitt, upon which this action was based.

The defendants' attorneys gave notice that they would move before the Supreme Court to review the entire decree and modify the same, because his Honor erred in holding:

1. That Martin Hitt was insolvent at the time of the conveyance to his intended wife, Miss Henderson.

2. That the antenuptial conveyance by Martin Hitt to his intended wife, though marriage was a valuable consideration, was intended to defraud creditors, and void as to them.

3. That his Honor erred in finding that though Mary Henderson was not cognizant of the indebtedness of Martin Hitt, and any intent on his part to defraud creditors, the antenuptial conveyance is still void and cannot hold against and in preference to the creditors of Martin Hitt.

4. Because his Honor erred in holding that the defendant, Aaron Wells, was cognizant of any fraudulent intent on the part of Martin Hitt, in conveying to his intended wife the property named in the antenuptial deed of conveyance.

5. Because his Honor erred in holding that the deed of conveyance from Mary Hitt to Aaron Wells, though an innocent holder and without notice, was void, except the action was barred by the Statute of Limitation.

*Messrs. Holmes & Simpson,* for appellant.

The deed from Hitt to his wife was not sufficient to charge plaintiff with knowledge of the fraud, or to give currency to the Statute of Limitations. The burden of proof was on the defendants. 6 *Rich. Eq.* 96; 7 *Id.* 430; *Bump Fraud. Conv.* 532–3. The record of the deed was not sufficient to put plaintiff on inquiry; it was constructive notice only of what appeared on its face. 5 *Wait Dig.* 440, *No.* 46; 47 *N. Y.* 410. The

statute did not commence to run before judgment obtained, for until then the equitable action would not lie. *Burrill Ass.* 597; *Van Santv. Eq. Pr.* 129; *Bump Fraud. Conv.* 454, 511; 1 *S. C.* 186; 2 *McC. Ch.* 410; 4 *Johns. Ch.* 671; 2 *Id.* 144; 18 *N. Y.* 500; 2 *Ed. Ch.* 197; 2 *Paige* 54; 1 *Id.* 308; 30 *Barb.* 550; 17 *Ala.* 685; 4 *Jones (N. C.)* 66; 1 *Denio* 190; 26 *How. Pr.* 80. There was no cause of action then until the judgment was obtained in June, 1875, and then the statute began to run. 2 *Story Eq. Jur.* 1521 *a;* 7 *Wait Ac. & Def.* 231, 278; 25 *N. Y.* 194; 37 *Id.* 657; 26 *Tex.* 551; 7 *Am. Dec.* 737; 8 *Cranch* 93. The deed was voluntary and void. 1 *Am. Lead. Cas.* 74, 77; *Riley Ch.* 241; 2 *Desaus.* 264. If the settlement was made on the solicitation of the intended wife, it being for the *whole* of his estate, it cannot be sustained. Authorities, *supra;* 3 *Wait Ac. & Def.* 669; *Bump Fraud. Conv.* 309.

*Mr. B. W. Ball,* for Hitt and wife.

The marriage was a sufficient consideration to support the settlement, even of the husband's entire estate, for the proof shows that the marriage was contingent on the settlement. 7 *Am. Dec.* 362, note; 29 *Gratt.* 628; 17 *Ves.* 264; 6 *Id.* 752; 2 *Desaus.* 264; 3 *Id.* 223; 1 *DeG. M. & G.* 441; 7 *Pet.* 389; 103 *U. S.* 22; *Bump Fraud. Conv.* 293. Upon examination it will be found that the facts of this case differ materially from those in *Davidson* v. *Graves, Riley Ch.* 232. The statute commenced to run from the record of the deed, and was not suspended until judgment obtained. 7 *Rich. Eq.* 260, 430; 1 *Hill Ch.* 113; 4 *S. C.* 249; *Bump Fraud. Conv.* 548; 50 *Mo.* 95; 10 *Rich. Eq.* 353; 11 *Id.* 27, 39. In 1 *S. C.* 186, and 14 *Rich. Eq.* 154, there were simple contract creditors, while here they are bond creditors. In this case there was judgment, but no proof of execution and return of *nulla bona,* which were necessary. 2 *Johns. Ch.* 283; 4 *Id.* 671; 6 *Id.* 139.

*Mr. J. W. Ferguson,* for defendant Wells.

March 29th, 1882. The opinion of the court was delivered by

Pressley, A. A. J. The personal estate of William Hitt was sold by his administratrix in November, 1861, and his son Henry and son-in-law Marion Andrews then bought some of said property and settled for it by sealed notes, to both of which Martin Hitt was one surety, and B. L. Hitt was the other as to the note of Marion Andrews.

Martin Hitt was sued on said notes in March, 1867. At that time Marion Andrews was living in Mississippi. His other surety, B. L. Hitt, had died, leaving an estate of $3,500. His administrator paid all his debts except those due to estate of William Hitt. Why he did not pay the said sealed note, or whether any effort was made to fix *devastavit* on him for its non-payment, does not appear. Henry Hitt was then alive, but died in 1873. He and Marion Andrews, by virtue of his marital rights in his wife's share, were distributees of William Hitt's estate. It is not proved when, if ever, their shares were paid to them, nor is any reason shown why their shares were not applied to extinguish their said notes. Suits thereon against Martin Hitt were pending until June, 1875, and judgments were recovered against him. The long delay arose from failure to hold the courts and from other causes not stated.

Martin Hitt married his present wife in November, 1868, then settling on her all his visible estate. The marriage was stated as the consideration, but his express purpose was to avoid payment of said notes. She did not know of that purpose and made no inquiry on the subject of his indebtedness. Afterwards, in December, 1873, she and he sold one of the plantations, thus settled, to their co-defendant Aaron Wells, for full consideration secured by mortgage of said plantation. He knew of her title and of the said suits against Martin Hitt, and was cautioned not to buy said land, but nothing appears in the testimony which indicates that said sale was made as a further attempt by Martin Hitt to put his land more certainly out of reach of his creditors, and such intent by him would seem to be rebutted by the fact that said sale was on credit, secured by mortgage.

Mary Hitt, administratrix of William Hitt, died after recovering said judgments, and plaintiff, as administrator *de bonis non*, filed this complaint in November, 1877. It alleges fraud in

said settlement, seeks to set aside both the settlement and the conveyance to Aaron Wells, and alleges that the fraud was discovered within four years. The Circuit judge holds that said settlement was a fraud and that its contents are such as to affect the wife with the fraud, though she was ignorant of the other facts, but he dismisses the complaint because he sustains defendants' plea of the Statute of Limitations.

Plaintiff appeals on the question of the statute, and defendants appeal from that portion of the decree which holds that the wife is affected by the fraud of the husband.

The case of *Davidson* v. *Graves, Riley Ch.* 232, fully sustains the Circuit decree in this case on the fraud question. It is most earnestly argued before us that said case is clearly in conflict with a long series of well-considered cases which conclusively settle that marriage is a sufficient consideration to uphold a settlement by an insolvent person, even though fraud be thereby intended, if the wife be ignorant of that intent. We 'concede that doctrine to be so settled, and, it seems to us, to be fully recognized in the case of *Davidson* v. *Graves.*

In that case, two settlements were before the court—one, antenuptial and the other, post-nuptial—the former, being a settlement by the son of Admiral Graves, is that to which the chief portion of said decision relates. It was a settlement without precedent, in that it conveyed, in consideration of marriage, *the whole estate of the husband.* None of the settlements in any of the previous cases had attempted such wholesale fraud.

In *Tunno* v. *Trezvant,* 2 *Desaus.* 264, the husband was engaged in merchandise as one of a partnership. He settled upon the intended wife all his *private* estate. But, before that settlement was accepted, the friends of the wife made proper inquiry, and were satisfied that the assets of the partnership were sufficient to pay its debts. Those assets proved insufficient, but the court held that, as due diligence had been used by the friends of the wife, her rights in said settlement could not be affected by the subsequent discovery that the partnership, of which the husband was a member, was insolvent at the time of the settlement.

But, in *Davidson* v. *Graves,* and also in this case, the whole

estate of the husband was conveyed away, nothing whatever being reserved for the payment of any debts, however small or few. The very contents of such a settlement are, at least, sufficient notice of fraud to make it the imperative duty of the wife to inquire whether it could be honestly made. There was no such inquiry in *Davidson* v. *Graves,* and none in this case. The wife is, therefore, regarded as having the knowledge which proper inquiry would have given her, and she is, therefore, affected by the fraud involved in the settlement. This is the principle which, applied to the special facts in the case of *Graves* ads. *Davidson,* places it in complete harmony with the previous cases, and leaves it unassailable.

On the question of the statute, plaintiff contends that it should not begin to run at the time the said settlement was recorded, because, he says, it did not contain matter amounting to notice of the fraud. We regard the rule as well established, that where the facts set forth in a deed furnish a reasonable clue to the discovery of a fraud involved therein, that is notice of the fraud when the deed is recorded. In this case, we have held that the very contents of the settlement were notice of the fraud to the wife, who did not know that Martin Hitt owed any debts; much more, then, were they notice to the plaintiff, who was, the chief creditor.

Plaintiff further contends, that, since he could not sue in equity to set aside said settlement until he had recovered judgments at law, therefore the statute should not run against him until the date of his said judgments. It is not certain that equity would not have original jurisdiction of this matter. Martin Hitt being only surety to said notes, and his principals being distributees of said estate, he had rights in equity to have their share applied to said notes. In 1867, when that suit at law commenced, such equitable defense could not be set up in that court. To get advantage thereof required removal of the case into equity, and that right of removal by defendant was recognized in *Hinson* v. *Pickett,* 1 *Hill Ch.* 35, as giving the plaintiff the privilege of commencing his case in equity, in order to avoid circuity of action.

But, if plaintiff could not originally have sued this whole

matter in equity, then he is not yet properly in that court, because the rule which prevents the suing a purely legal debt in equity until after judgment at law, as imperatively requires that the legal remedies be fully exhausted before seeking relief in equity in such case, and that is not proved to have been done in this case, either as to the principals or other surety to the said notes.

However, conceding that plaintiff is rightfully in equity, and that he could not have come there until the recovery of judgment at law, is the running of the statute thereby suspended until the date of said judgment? It is so decided in several of the other States, and some of us have had very grave doubts on that point. But a very careful examination of the cases in this State has convinced us that a long series of uniform decisions conclusively settle that in this State the statute begins to run at the discovery of the fraud. It was so decided in *Van Rhyn* v. *Vincent*, 1 *McC.* 314. That case was afterwards confirmed in *Eichelberger* v. *Kibler*, 1 *Hill Ch.* 113, and in *Prescott* v. *Hubbell*, 1 *Hill Ch.* 213.

Nowhere in any of these cases and others on same point is there the slightest recognition that any obstacle which due diligence of the creditor could remove will stay the running of the statute until he shall remove it. That point was expressly raised in *McLure* v. *Ashby*, 7 *Rich. Eq.* 430, and Chancellor Dunkin on Circuit held that the statute in such case would be stayed, but, on appeal, he was overruled, he only dissenting from the rest of the court. Subsequently, in *Lott* v. *De Graffenried*, 10 *Rich. Eq.* 346, the court again affirmed that the statute runs from the discovery of the fraud, and said that is the "well-settled doctrine."

The foregoing view makes it unnecessary for us to inquire whether, if said settlement were set aside, Aaron Wells would, nevertheless, have valid title to the land conveyed to him by Martin Hitt and wife before the lien of said judgment. That question has not been pressed in the argument, and we refer to it only to reserve it.

The Circuit decree is affirmed and the appeal dismissed.

FRASER, A. A. J., concurred.

McIver, A. J.   Being unable to concur in so much of the opinion of the majority of this court as sustains defendant's plea of the Statute of Limitations, I propose to state, very briefly, the reasons for my dissent.

It is quite true, as a general rule, that in actions of the character of the one now under consideration, the statute begins to run from the discovery of the fraud complained of, but I do not think it is universally true, as there may be circumstances which will prevent the statute from commencing to run until after that time; as, for example, where there is no one in existence capable of then commencing the action.   The undoubted rule in an action on a promissory note is, that the statute begins to run at the maturity of the note; and yet it is well settled, where the payee of the note is dead at that time, the statute will not begin to run until administration is granted.   *Geiger* v. *Brown*, 4 *McC*. 423, and, to same effect, see *Harvin* v. *Riggs*, *Rich. Eq. Cas.* 287.   The same doctrine was held in *Murray* v. *East India Co.*, 5 *Barn. & Ald.* 204, (7 *Eng. Com. L.* 66,) where Abbott, C. J., uses this language: " It cannot be said that a cause of action exists unless there be a person in existence capable of suing."

Upon the same principle, it seems to me, the statute could not commence to run until the plaintiff, by exhausting his legal remedies, was in a condition to enable him to bring this action, for it is conceded that until then an action of this character could not be maintained.   The cause of action cannot be said to have accrued until there is some one to whom the cause of action has accrued, as is well said by Colcock, J., in *Geiger* v. *Brown, supra*. If, however, a plaintiff should be guilty of laches in exhausting his legal remedies, then a court of equity might very well, upon another principle, refuse to grant the relief sought.

But where a plaintiff has, through no fault on his part, but from unavoidable causes, been delayed in exhausting his legal remedies beyond the statutory period, a court of equity should not inexorably apply the bar of the statute; but, upon principle established in the cases above cited, might very well hold that the statute did not commence to run until there was some one in

a condition which enabled him to bring the action—some one to whom a cause of action has accrued.

This seems to be the rule adopted in some of the other States, as appears by the authorities cited in argument of the counsel for the plaintiff, which need not be repeated here; and in the absence of any express adjudication here to the contrary, this rule is recommended to our approval by the manifest equity upon which it rests.

It is worthy of notice, too, that the rule relied upon by the majority of this court, is usually stated in a negative rather than an affirmative form—that in equity the statute will not commence to run until the discovery of the fraud—and it would not necessarily follow from the rule so stated, that in all cases the statute would commence to run as soon as the fraud was discovered. It only fixes a period *beyond* which the statute *shall not* commence to run, but it does not necessarily fix the period at which it *shall* commence to run. Hence, if any other circumstance intervenes of such a character as that it ought to prevent the currency of the statute, there is no departure from the rule in allowing such circumstance its legitimate effect.

Of course, these views are advanced upon the theory that the question under consideration has never been distinctly decided in this State, for if it had, then, of course, I would cheerfully yield my judgment to such authority. I do not, however, think that the point has ever been distinctly decided in this State. The strongest case looking that way, and the one principally relied on, is *McLure v. Ashby*, 7 *Rich. Eq.*, 430.

In that case Stephen J. Ashby, in March, 1843, confessed a judgment to a number of his creditors, including the plaintiffs and his brother John, and in January, 1852, the plaintiffs filed their bill alleging that the debt to John was pretensive and fraudulent, and seeking to be relieved against such fraud. The property of Stephen was levied on and sold by the sheriff at different times between 1844 and January, 1847, and a portion of the proceeds applied to older executions, leaving in the hands of the sheriff a large amount applicable to the judgment of March, 1843. There was, however, an older judgment in favor of one De Graffenried, which it was alleged was satisfied, and a

litigation was pending as to that fact, which was not determined until 1851, when it was ascertained that there was nothing due on the De Graffenried judgment, thus leaving the whole amount in the hands of the sheriff applicable to the judgment of March, 1843. When this litigation terminated, John Ashby obtained a rule against the sheriff to show cause why he did not pay over to him the amount of his demand. Thereupon the plaintiffs filed their bill alleging that the claim of John Ashby was fraudulent, and asking to be relieved against it. To this bill the Statute of Limitations was pleaded, and the plea was sustained upon the ground that the evidence showed that the plaintiffs had knowledge of the fraud at the time the judgment was confessed, in March, 1843.

From this brief statement of the case it will be seen that there was no *legal* obstacle in the way to prevent the plaintiffs from filing their bill as soon as the fraud was discovered, for they were then judgment creditors, and it does not appear that there was anything to prevent them from proceeding at once to exhaust their legal remedies against the judgment debtor and then filing their bill to be relieved from the fraud charged. The cause of action had then accrued to them, and hence the statute then commenced to run. Their delay was voluntary, and they, of course, were properly held to the consequences of such delay.

Here, however, the plaintiff could not proceed until he had obtained judgment; a cause of action did not accrue to him until he had exhausted his legal remedies, and if he was delayed in obtaining his judgment by causes beyond his control, and proceeded with reasonable promptness after obtaining his judgment to institute this action, it does seem to me that a court of equity should not apply the bar of the statute.

As is said by Johnson, Ch., in speaking of the Statute of Limitations, in his Circuit decree in *McLure* v. *Ashby*: "In matters of an equitable nature—the terms of the statute not extending to them—this court is not imperatively bound to apply it, and only applies it by analogy to the practice at law, and then it does not apply it when sound conscience would be offended by its application." Or, as is said by Dargan, Ch., in delivering the opinion of the Court of Appeals in the same case, where he is

pointing out the distinction between the rules which govern the application of the Statute of Limitations in a court of law, and those which obtain in a court of equity, when called upon to adjudicate a matter of purely equitable cognizance : " They are not obligatory upon this court and do not apply to proceedings in equity, except so far as the court has thought it conducive to the ends of justice to apply them in analogy to the rules which prevail in a court of law. And as the court only acts on this analogy, because of its subserviency to the ends of justice, it withholds such action when it would be obviously subversive of equity."*

For these reasons I am unable to concur in the conclusion that the action of the plaintiff was barred by the Statute of Limitations.

Decree affirmed.

---

* There is a class of cases to which reference might be appropriately made here, and that is, those cases where the Statute of Limitations is held to be suspended as between debtor and creditor of two countries at war with each other, while the war continues. Such was the decision in our own State, in the case of *Wall* v. *Robson*, 2 *N. & McC.* 498, where the right of action accrued before the war of 1812, between Great Britain and the United States, but was held to be suspended during that war, the creditor being a citizen of Great Britain and the debtor a citizen of this State. Speaking of the Statute of Limitations, Judge Bay, in delivering the opinion of the court, says: "It never could have been intended to prevent a man who had never been guilty of any willful laches or delay, but who had been prevented by inevitable necessity from pursuing his just rights." On a similar state of facts, the same conclusion was reached in *Hanger* v. *Abbott*, 6 *Wall.* 532. In these cases it is held, that it is against public policy to permit actions between belligerents to be maintained. This principle affects the right of action only, for the non-computation of time under the Statute of Limitations is not a matter of public policy, but is a result of the same rule declared in *Moses* v. *Jones*, 2 *N. & McC.* 259, that the courts will not apply the bar of the statute to a demand while suit is prohibited by law. See other cases cited in 10 *Am. Dec.* 633. The case of *Shand* v. *Gage*, 9 *S. C.* 187, was decided upon the principle that the military order there relied upon as having prevented the action, was an " interference with the plaintiff's remedy which did not occur through the act of a source of authority competent to enact or modify any State statute." In the principal case, the settled law did not permit an action to set aside the fraudulent conveyance until judgment was obtained on the debt.—Reporter.